☑ Original ☐ Du

CLERK'S OFFICE
A TRUE COPY
Dec 22, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Six (6) electronic cellular devices currently stored at FBI Milwaukee Field Office, St. Francis, WI 53235 (See Attachments)

)
)
)
)
)
)

Case No. 23-M-549 (SCD)

Matter No.: 2023R00327

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____1-5-24_____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephen C. Dries_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    _____12-22-23. 12:30 pm_____

*Stephen C. Dries*
*Judge's signature*

City and state:    _____Milwaukee, WI_____    Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

The following electronic Devices, which are currently stored at the FBI Milwaukee Field Office located at 3600 South Lake Drive, St. Francis, Wisconsin 53235:

   a.   Black and red Verizon Kyocera flip phone

           i.   FBI Milwaukee inventory evidence number 1B88

   b.   Black and red Verizon Kyocera flip phone

           i.   FBI Milwaukee inventory evidence number 1B89

   c.   Apple iPhone, phone with the words "xaee love" on the exterior case

           i.   FBI Milwaukee inventory evidence number 1B90

   d.   KooBee smart phone

           i.   FBI Milwaukee inventory evidence number 1B93

   e.   Apple iPhone with black and blue case

           i.   FBI Milwaukee inventory evidence number 1B94

   f.   Apple iPhone in black protective case

           i.   FBI Milwaukee inventory evidence number 1B95

This warrant authorizes the forensic examination of the above-described electronic Devices, for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the Devices described in Attachment A that relate to violations of violations of 18 U.S.C. § 2119 and 18 U.S.C. § 924c involving Amarion Thurman, Christopher Phillips, Rylen Nash, or any other subject, stored on the Devices, to include:

   a. any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

   b. any information recording any targets' schedule or travel;

   c. any web search information related to the offenses described above;

   d. photographs of locations evidencing pre-robbery surveillance or vehicles or people related to the offenses described above;

   e. any information related to the proceeds from the robberies described above;

   f. any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

   g. all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.



CLERK'S OFFICE
A TRUE COPY
Dec 22, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Six (6) electronic cellular devices currently stored at FBI Milwaukee Field Office, St. Francis, WI 53235
(See Attachments)

)
)
)
)
)
)

Case No. **23-M-549 (SCD)**

**Matter No.: 2023R00327**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 2119 and 924(c) | Carjacking; Brandishing a firearm in furtherance of a violent crime; |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**SA Kevin W. Kaiser, FBI**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means).*

Date: _____ 12-22-23 _____

_____
*Judge's signature*

City and state: Milwaukee, WI

**Hon. Stephen C. Dries, U.S. Magistrate Judge**
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEACH WARRANT**

**Matter No.: 2023R00327**

I, Kevin Kaiser, being first duly sworn on oath, on information and belief state:

**I.      INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April 2023.  Since April 2023, I have been assigned to FBI's Milwaukee Area Violent Crimes Task Force (MAVCTF), a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

2.      Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software which are (a) instrumentalities, fruits, or evidence of crime, or (b) storage devices for information about crime.

3.      To this end, based upon my training and experience, I know that individuals involved in violent crimes use cellular telephones to maintain contact with co-conspirators aurally

or via electronic message in "text" format. I also know that it is common for suspects who commit violent crimes to take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal proceeds and firearms that they control or possess.

4.      Based on the investigation to date, I submit that there is probable cause to believe Amarion L. Thurman (DOB XX/XX/2000), Christopher D. Phillips (DOB XX/XX/2003) and Rylen A. Nash (DOB XX/XX/2003) committed violations of 18 U.S.C. § 2119 and 18 U.S.C. § 924c in the Eastern District of Wisconsin in May and June of 2023.

5.      This affidavit is based upon my personal knowledge, my training and experience, and on information reported to me by other state and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, physical surveillance, and witness statements that I consider to be reliable as set forth herein. The facts of this Affidavit are based upon information obtained from my investigation, as well as information I have received from other law enforcement officers.

6.      Because this affidavit is submitted for the limited purpose of obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.  I have attempted to set forth only the facts that I believe are pertinent to establishing the necessary foundation for the warrant.

## II.      IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7.      This affidavit is submitted in support of an application for a search warrant for the below-described portable electronic devices, which are currently stored at the FBI Milwaukee Field Office located at 3600 South Lake Drive, St. Francis, Wisconsin 53235, for evidence of the user's possible involvement in the armed carjackings described in this affidavit:

   a.   Black and red Verizon Kyocera flip phone

i.  FBI Milwaukee inventory evidence number 1B88

b.  Black and red Verizon Kyocera flip phone

    i.  FBI Milwaukee inventory evidence number 1B89

c.  Apple iPhone, phone with the words "xaee love" on the exterior case

    i.  FBI Milwaukee inventory evidence number 1B90

d.  KooBee smart phone

    i.  FBI Milwaukee inventory evidence number 1B93

e.  Apple iPhone with black and blue case

    i.  FBI Milwaukee inventory evidence number 1B94

f.  Apple iPhone in black protective case

    i.  FBI Milwaukee inventory evidence number 1B95

8.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## III.    PROBABLE CAUSE

### Carjacking #1 - Audi Q7

9.      On May 21, 2023, at approximately 2:35 a.m., Officers from the City of Milwaukee Police Department (MPD) responded to 3XXX North Bremen Street, Milwaukee, Wisconsin for an armed carjacking complaint.

10.     Investigation revealed that at approximately 2:30 a.m. the victim was parked outside their residence in an Audi Q7 after returning home from work.  The victim observed a white, 4-door vehicle pulled in front of her vehicle, prohibiting them from pulling out of her parking spot. A male suspect opened the door to the Q7, pointed a gun at the victim's head and told the victim to get out of the car and to leave her phone. The victim exited the Q7 and ran

towards her residence. The suspect entered the Q7 and began driving northbound in a nearby alley out of the victim's sight.

11.   At approximately 5:07 a.m., MPD Detective Matthew Bongel responded to 3XXX North 10th Street, Milwaukee, Wisconsin, where several items were located near the street curb that were reported stolen during the above-described carjacking. One of the items recovered by MPD was the victim's cell phone. MPD Latent Print Examiner Chet St. Clair examined latent fingerprint lifts from the recovered stolen cell phone and identified Amarion THURMAN's right thumb, left thumb, and left middle finger.

12.   At approximately 7:00 p.m., undercover MPD Officers Malafa and Domine observed the above-described Audi Q7 traveling in the area of the 4900 block of West Parkway Drive, Milwaukee, Wisconsin. The officers reported their observations of the stolen vehicle to supporting squads. As they followed the stolen Audi Q7, uniformed officers responded to their location and attempted to initiate a traffic stop of the stolen Audi Q7 in the area of North 55th Street and West Keefe Avenue. Near the intersection of North 54th Street and West Capitol Drive, the occupants of the stolen Audi Q7 exited the vehicle and fled the pursuing MPD squad cars on foot. The stolen / abandoned Audi Q7 continue to slowly roll northbound on North 54th Street until it came to a rest against the curb. MPD Russell Barker searched the inside of the abandoned Audi Q7 and located three cellular telephones. The phones were later transferred to FBI Milwaukee evidence. The phones are described as the following:

- **Black and red colored Verizon flip phone, FBI Inventory 1B88;**

- **Black and red colored Verizon flip phone, FBI Inventory 1B89; and**

- **Apple iPhone cellular phone with the words "xaee love" on the exterior case; FBI Inventory 1B90.**

**Carjacking #2 - Buick Encore**

13.     On June 3, 2023, at approximately 7:03 p.m., a victim parked his 2018 Buick Encore on the street in front of 3XXX North 9th Street, Milwaukee, Wisconsin. The victim exited his vehicle and began to walk into the corner store at that location.

14.      As the victim approached the corner store, two black males were sitting on the steps in front of the store. One of those individuals stood up, produced a long gun from his jacket, pointed it at the victim, and demanded the victim's belongings. The gunman reached into the victim's pockets, took his wallet and car key. The second individual who was seated on the steps with the gunman, stood up and went through the victim's pockets.

15.     Both suspects then ran to the victim's vehicle, entered the vehicle, and drove northbound on North 9th Street, at which time the victim entered the store and called the police. Suspect #2 drove the Buick Encore from the robbery scene.

16.      As the carjacking occurred outside the store, a third suspect, who had arrived with the original two suspects was inside the store buying food. When the two suspects fled in the victim's vehicle, suspect #3 began walking westbound on West Ring Street from the store.

17.     MPD arrived on scene to investigate the above-described carjacking complaint.

18.     The corner store's security camera video corroborated the victim's statements to MPD. The video showed three suspects walking together to the store.  One suspect entered the store, who was later identified as being Amarion Thurman (B/M, XX/XX/2000), observes the other two suspects commit the robbery, and then after purchasing items, sprints towards an alley where the victim's auto eventually exits.

19.     On June 12, 2023, MPD Detective Michael MARTIN conducted a *Mirandized* interview of Christopher PHILLIPS (B/M, XX/XX/2003), who stated that he was with Amarion

THURMAN and Rylen NASH when they walked to the above-described corner store on 9th Street, Milwaukee, Wisconsin. He reported that THURMAN went inside the store, while he (PHILLIPS) and NASH sat on the front steps. When the Buick Encore victim approached the store, NASH robbed the victim and he, PHILLIPS, assisted. Afterward, they picked up THURMAN in the victim's SUV and fled the robbery scene. PHILLIPS discarded the stolen SUV's license plate at his PHILLIPS' aunt's house, where the auto was later recovered and processed for evidence by MPD.

## Carjacking #3 - Lincoln MKX

20.     On June 7, 2023, MPD responded to the area of North 14th Street and West Burleigh Street, Milwaukee, Wisconsin for an armed carjacking complaint that occurred at approximately 2:22 p.m..

21.     Investigation revealed the victim had just finished cutting the grass at his aunt's vacant lot and was loading the lawnmower into his 2017, blue, Lincoln MKX at 3XXX North 14th Street, Milwaukee, Wisconsin. The victim noticed suspect #1 approach him and said, "Give me what you got." The victim and suspect #1 began fighting and they both fell to the ground. While the victim was fighting with suspect #1, suspect #2 approached them and began striking the victim with a rifle. Suspect #1 and suspect #2 began punching and kicking the victim repeatedly. The victim was struck in the face with the rifle by suspect #2. The victim ran from the scene and was helped by a nearby motorist.

22.     During the altercation, the victim lost his key fob to his vehicle. Suspect #1 and suspect #2 obtained the key fob and drove the victim's vehicle away from the scene.

23.     On June 13, 2023, MPD Tony Castro conducted a *Mirandized* interview with Christopher PHILLIPS (DOB XX/XX/2003). During the interview, PHILLIPS advised that he,

Rylen NASH and Amarion THURMAN were involved with the carjacking of the Lincoln MKX. PHILLIPS advised he and Rylen NASH stole the car and picked up THURMAN a short distance after the carjacking.

### Carjacking #4 - Nissan Altima

25.     On June 11, 2023, at approximately 7:05 p.m., MPD Officers responded to an armed carjacking reported at 4XXX North 71st Street, Milwaukee, Wisconsin.

26.     According to the carjacking victim, who was a Lyft driver operating her 2022 Nissan Altima, she went to 4XXX North 71st Street, Milwaukee, Wisconsin to respond to a request for a Lyft ride. As the victim arrived at the above listed address, two black males were awaiting her arrival.

27.     Once the two males approached the victim's vehicle, suspect #1 entered the rear and suspect #2 entered the front passenger seat. The victim observed suspect #1 produce a black firearm that she described as unique in appearance with a barrel and some type of covering on it with holes.  The gunman then demanded the victim's vehicle. Suspect #1 told the victim to get out of the car and not to take any belongings with her. Suspect #1 exited the backseat of the vehicle and entered the driver's side door. The suspects obtained the victim's vehicle and cell phone and fled eastbound on West Hope Avenue.

28.     That same evening, the victim's stolen cell phone was GPS tracked to an address of 3XXX North 38th Street, Milwaukee, Wisconsin.  MPD officers responded to that location and observed several individuals enter a residence that is located next to the stolen cell phone's reported location.  Two of the individuals matched the general physical description of the carjacking suspects.  MPD Officers Jazmin Rowe and Steven Menge also observed the victim's

stolen Nissan Altima parked in the alley approximately two houses away from where they observed the group of individuals walk through a gangway and into 3XXX North 38th Street.

29.     MPD Officers made contact with the renter of 3XXX North 38th Street and the renter provided consent to enter the residence.  Once inside the residence, MPD officers observed Amarion THURMAN (DOB XX/XX/00) and Christopher PHILLIPS (DOB XX/XX/03) inside the residence.  Both THURMAN and PHILLIPS appeared to match the individuals who committed the carjacking of the Nissan Altima in both general physical appearance and the clothing they were wearing based on MPD's initial review of a Ring camera recording that captured the carjacking from a neighbor's residence at 4XXX North 71st Street, Milwaukee, Wisconsin.  The residence's renter provided consent to search and MPD Sgt. Ross Mueller located a Diamondback DB-15 (AR-style pistol) with holes in the foregrip underneath the mattress that THURMAN was observed sitting on.  That firearm matched the general description of the firearm used in the carjacking of the Nissan Altima a few hours earlier. THURMAN and PHILLIPS were taken into custody.

30.     MPD Detectives Michael Martin and Dana Rebro conducted *Mirandized* interviews of Amarion THURMAN.  He admitted involvement in the above-described carjacking of the Nissan Altima and identified Christopher PHILLIPS as a co-actor.

31.     MPD Detectives Martin, Schlacter, and Castro conducted *Mirandized* interviews of Christopher PHILLIPS.  He admitted involvement in the carjackings of the Nissan Altima, Buick Encore, and Lincoln MKX.  PHILLIPS also identified THURMAN and Rylen NASH (XX/XX/03) as co-actors in various incidents.

32.     On June 12, 2023, Detective Kent GORDON located and recovered two cellular telephones from Amarion THURMAN (B/M, XX/XX/2000) and placed them in MPD inventory

as evidence. The phones were later transferred to FBI Milwaukee evidence. These phones are further described as the following:

- **KooBee smart phone, FBI Inventory 1B93; and**

- **iPhone with black and blue case, FBI Inventory 1B94**

33.     On June 12, 2023, MPD Detective Michael MARTIN located and recovered a cellular telephone from Christopher D. PHILLIPS (B/M, XX/XX/2003) and placed the device on MPD inventory as evidence. The phone was later transferred to FBI Milwaukee evidence. This phone is further described as the following;

- **Apple iPhone in black protective case, FBI Inventory 1B95**

34.     On October 6, 2023, case agents received federal subpoena returns from Lyft, Inc. which revealed the username "Me Me" requested the Lyft ride on June 11, 2023, at approximately 7:05PM as described above. The associated phone number with the requestor's Lyft account is 414-998-8590.

35.     On October 25, 2023, case agents received federal subpoena returns from T-Mobile, which is the listed cell service provider for 414-998-8590. T-Mobile records indicate the listed subscriber as Amarion THURMAN and the T-Mobile cell phone account became effective on May 4, 2023.

36.     A federal search warrant (2023R00327) for historical cell site data associated with T-Mobile number 414-998-8590 was authorized on November 3, 2023 by United States Magistrate Judge William Duffin. On November 9, 2023 case agents received historical cell site data from T-Mobile for 414-998-8590. FBI SA George Rienerth, a member of the FBI's Cellular Analysis Survey Team (CAST), completed his review and analysis of the data on December 11, 2023. According to SA Rienerth, the cellular device associated with the phone number 414-998-8590,

which T-Mobile lists to Amarion THURMAN, was in the same general area from where the Nissan Altima was stolen when the carjacking occurred on June 11, 2023 as described above.

## IV.     TECHNICAL TERMS

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

      a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable

storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna

receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38.  Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that the electronic Devices described above have capabilities that

allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39.     Based on my knowledge, training, and experience, as well as my conversations with other Special Agents of the Federal Bureau of Investigation, who are experienced with electronic communication systems, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Devices.  This information can sometimes be recovered with forensics tools.

40.     *Forensic evidence*.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used it, and when.

41.     *Nature of examination*.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42.     *Manner of execution*.  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VI.    CONCLUSION

43.    Based on the facts contained within this affidavit, I believe that probable cause exists to search the Devices, which are more particularly described in Attachment A, and which are currently stored at the FBI Milwaukee Field Office located at 3600 South Lake Drive, St. Francis, Wisconsin 53235, for evidence of the aforementioned violations of 18 U.S.C. § 2119 and 18 U.S.C. § 924c including but not limited to the information contained in Attachment B.

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

The following electronic Devices, which are currently stored at the FBI Milwaukee Field

Office located at 3600 South Lake Drive, St. Francis, Wisconsin 53235:

    a.   Black and red Verizon Kyocera flip phone

          i.   FBI Milwaukee inventory evidence number 1B88

    b.   Black and red Verizon Kyocera flip phone

          i.   FBI Milwaukee inventory evidence number 1B89

    c.   Apple iPhone, phone with the words "xaee love" on the exterior case

          i.   FBI Milwaukee inventory evidence number 1B90

    d.   KooBee smart phone

          i.   FBI Milwaukee inventory evidence number 1B93

    e.   Apple iPhone with black and blue case

          i.   FBI Milwaukee inventory evidence number 1B94

    f.   Apple iPhone in black protective case

          i.   FBI Milwaukee inventory evidence number 1B95

This warrant authorizes the forensic examination of the above-described electronic

Devices, for the purpose of identifying the electronically stored information described in

Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.      All records on the Devices described in Attachment A that relate to violations of violations of 18 U.S.C. § 2119 and 18 U.S.C. § 924c involving Amarion Thurman, Christopher Phillips, Rylen Nash, or any other subject, stored on the Devices, to include:

      a.   any information related to possession of firearms or ammunition (including photographs, text messages, emails, or any other communication information);

      b.   any information recording any targets' schedule or travel;

      c.   any web search information related to the offenses described above;

      d.   photographs of locations evidencing pre-robbery surveillance or vehicles or people related to the offenses described above;

      e.   any information related to the proceeds from the robberies described above;

      f.   any communications via text messages, email, Facebook, Twitter, or other web-based applications between the subjects and others regarding the offenses described above; and

      g.   all bank records, checks, credit card bills, account information, and other financial records.

2.      Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.